AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the
Western District of Arkansas
El Dorado Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SALES@ALTCANCERCREAM.COM THAT IS STORED AT PREMISES CONTROLLED BY GODADDY.COM, LLC. | Case No. _1:17-CM-10_<br><br>**Filed Under Seal** |

*US DISTRICT COURT WESTERN DIST ARKANSAS FILED APR 2 4 2017 DOUGLAS F. YOUNG, Clerk By _____ Deputy Clerk*

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe property to be searched and give its location):*
**See "Attachment A"**
located in the Western District of Arkansas there is now concealed *(identify the person or describe the property to be seized):*
**See "Attachment B"**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 331(d) | Introduction or Delivery into Interstate Commerce of Unapproved New Drug |
| 18 U.S.C. § 1341 | Mail Fraud |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Christopher Walker, Special Agent, FDA
Office of Criminal Investigations

Sworn to before me and signed in my presence.

Date: __4-24-17__

_____
*Judge's signature*

City and state: __Texarkana, Arkansas__

Barry A. Bryant, United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SALES@ALTCANCERCREAM.COM THAT IS STORED AT PREMISES CONTROLLED BY GODADDY.COM, LLC. | Case No. ___*1:17-cm-10*___ <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Christopher Walker, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with [a] certain account[s] that is stored at premises controlled by GoDaddy.com, LLC, an email provider headquartered at 14455 N. Hayden Road, Ste. 226, Scottsdale, Arizona. The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require 14455 N. Hayden Road, Ste. 226, Scottsdale, Arizona, to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent with the Food Drug Administration (FDA) – Office of Criminal Investigation and have been since November 2016.  I have experience in training into applicable drug laws under Title 21.  I have previous experience in law enforcement with the Secret Service for the previous ten years.  I have participated in a variety of fraud and internet-

based type of investigations ranging from simple single party investigations to complex conspiracies.  I have testified in court concerning fraud schemes.  I have also attended FDA schools regarding drugs and its applicable laws, the methods and techniques used by individuals to defraud victims using various "new drugs" that advertise the treatment to cure various diseases.

3.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 331(d), Introduction or Delivery into Interstate Commerce of Unapproved New Drug, and 18 U.S.C. § 1341,  Mail Fraud, that may have been committed by Timothy Hampton doing business as "The Original Cream Company."   There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

5.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated."

## RELEVANT TERMINOLOGY AND STATUTES

6.     The United States Food and Drug Administration (FDA) is charged with protecting the health and safety of the American public by ensuring, among other things, that drugs sold for administration to humans bear labeling containing true and accurate information.

The FDA's responsibilities include regulating the labeling and distributing of prescription drugs shipped or received in interstate commerce.

7.      Under the Food, Drug and Cosmetic Act in Title 21, the definition of a "drug" includes articles that:  (1) are intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in man; (2) are intended to affect the structure or function of the body of man; (3) are intended as components of articles in (1) or (2).  21 U.S.C. § 321(g)(1)(B)-(D).  A prescription drug is a drug that, due to its toxicity and other potential harmful effects, or the method of its use, or the collateral measures necessary to its use, is not considered safe for use except under the supervision of a practitioner licensed by law to administer such drugs.  *See* 21 U.S.C. § 353(b)(1)(A).

8.      The term "new drug" means any drug not generally recognized as safe and effective among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs for use under the conditions prescribed, recommended or suggested in its labeling.  21 U.S.C. § 321(p).  With limited exceptions, unless there is in effect with the FDA a new drug application ("NDA") or an abbreviated new drug application ("ANDA"), a drug is an unapproved new drug and cannot lawfully enter into interstate commerce.  21 U.S.C. §§ 355(a) and 331(d).

9.      In 2008, the FDA began targeting companies that offered or sold black salve creams and lotions that claimed to cure skin conditions such as skin cancers.  These salves were branded to cure skin cancer and were not approved drugs by the FDA.  The Department of Dermatology at the Center for Drug Evaluation and Research found that the "Black Salve" is a colloquial term for a number of different compounds containing escharotic agents as their

primary active ingredients.  Escharotic agents are caustic, corrosive substances that produce a thick coagulated crust (an eschar) and subsequently scar the skin of the user.  Examples of escharotic agents include zinc chloride, bloodroot and goldenseal.

10.     The Department of Dermatology noticed a "growing trend whereby patients self-treat skin cancers (basal cell, squamous cell, and melanoma) with unregulated, often internet acquired escharotic agents."  Websites selling these "black salve" products are often making unsubstantiated claims of cures, guaranteeing success in removal of malignant lesions, and offering testimonials and anecdotal reports as support for these claims.  The escharotic agents often contain zinc chloride and bloodroot as primary components in varying concentrations. The strength and purity of these products are unknown.  There is a lack of scientifically documented proof of efficacy and no proof of tissue selectivity.  These products are being offered for treatment of both non-melanoma and melanoma skin cancer which are conditions that are not amenable to self-diagnosis.  Under these circumstances, it is not possible to provide adequate directions so that a layman can use the products safely.

11.     In 2007, a reported death from metastatic basal cell carcinoma was determined to be a result of the "false cure from treatment with topical escharotic therapy."  The use of these products can also result in marked scarring requiring numerous subsequent surgeries in an attempt to achieve an acceptable cosmetic outcome.  There are examples in the literature of extensive mutilation and exposed bone.  One of the issues with using this type of escharotic is that there is no control of the extent of the destruction of surrounding normal tissue.  In other words, the tissue destruction is non-selective and indiscriminate.  The Department of Dermatology has found that these black salves are being experimented with at a time when conventional medicine is experiencing an extraordinary proven track record of successful

treatment of skin cancer.  Cure rates of 99% for primary basal cell, 94% for recurrent basal cell, 97% for primary squamous cell and 90% for recurrent basal cell are achieved with surgery.  For those patients who refuse surgery (out of fear, concern about cosmetic outcome, or inability to tolerate surgery), there are topical products with proven safety and efficacy against at least certain subsets of non-melanoma skin cancer which are FDA-approved.

## PROBABLE CAUSE

12.     On May 20, 2008, the FDA Compliance Branch sent a Warning Letter, after the FDA Center for Drug Evaluation and Research reviewed The Original Cream Company's website, www.altcancercream.com, and found they were marketing unapproved new drug and unapproved new animal products intended to treat cancer and other therapeutic and disease claims called the black salve.  The black slave and its related products were with the "blood root" ingredient targeted consumers looking to cure their skin cancer.  The Warning Letter, which stated the aforementioned facts about the products advertised on the website, cited that the website was in violation of Title 21 as the website promoted new and unapproved drugs.  The letter was issued to Burt Hampton, brother of Timothy Hampton, and registered agent for the website.  On June 6, 2008, Burt Hampton responded to the Warning Letter stating that he was not associated with the company or website, but would forward the Warning Letter to the PO Box in Magnolia, Arkansas for The Original Cream Company.  Magnolia, Arkansas is located in the Western District of Arkansas.

13.     In February 2013, the FDA Compliance Branch initiated another review of The Original Cream Company's website and found that the website still contained claims for the treatment of cancer and other disease or therapeutic claims to include "alternative skin cancer treatments" and "natural skin cancer cure" along with treatment of various animal skin

conditions such as sarcoids .  The Compliance Branch conducted two undercover purchases from the website and received the Black Salve and the Herpes Salve at an undercover location in Maryland with product fliers that contained further claims that the Black Salve could treat cancer.

14.     In May 2013, FDA Dallas District Lead Investigator Torrance Slayton initiated a physical inspection on The Original Cream Company at of their facility located at 415 W. Columbia, Magnolia, Arkansas.  Upon arrival, the investigators were met at the 10,000 square foot corrugated metal building by Timothy Hampton, the self-proclaimed owner of The Original Cream Company.

15.     The inspection found that The Original Cream Company manufactures several unapproved topical drug products intended to treat diseases such as skin cancer, herpes, and genital warts.  The company was informed in writing and verbally counseled by Inspector Slayton that they were manufacturing and shipping unapproved drug products and that this conduct was illegal.  Hampton reported that he took over the operation in February 2010 after his sister's death.  Hampton advised that he was the sole owner and employee of The Original Cream Company and acknowledged that his brother, Burt Hampton, received the 2008 Warning Letter.

16.     After the inspection, The Original Cream Company added direct cancer and disease claims links to "Educational Info" entitled "Skin Cancer Basics."  In response, in September 2013, the Dallas District Compliance Branch purchased three samples, and in October 2014, the Dallas District Compliance Branch purchased three additional samples with free

educational information about skin cancer.  In total, the Dallas District Compliance Branch

purchased eight (8) samples all showing unapproved claims on the products.

17.     On January 9, 2017, I initiated an undercover purchase of #100 Black Salve and

product insert in the amount of $49.95 from the website of altcancercream.com, the same

website used by the FDA Dallas District Compliance Branch identified as belonging to Timothy

Hampton's company The Original Cream Company.  The website appears to be the same as

observed in 2013 to include links to "skin cancer basics," "genital warts basics," and the ability

to obtain a free product insert.  I found the following information in the "Contact Us" section that

the website:

>       To:  sales@altcancercream.com as a form of communication.
>       The Original Cream Company
>       P.O. Box 1557
>       Magnolia, Arkansas 71754
>       Phone:  870-949-0250

18.     After the purchase was made, I received an email from

sales@altcancercream.com stating that my order has been paid.  On January 23, 2017, I again

received an email from sales@altcancercream.com stating my order was complete.

19.     On January 24, 2017, the #100 Black Salve with product insert was received at an

undercover mailbox via U.S. mail, priority express, with a return address of Timothy O.

Hampton, The Original Cream Company, PO BOX 1557, Magnolia, AR.  The product insert

attempted to make a disclaimer by stating that the product has not been evaluated by the FDA

and was "not intended to diagnose, treat, cure or prevent any disease."  However, the insert goes

on to make the claim that "there is no danger, toxic or otherwise, of applying ORIGINAL

FORMULA BLACK SALVE to healthy tissue."  The entire insert describes that the salve "kills

cancer" and does not affect normal tissue.  It makes claims of removing various skin lesions and describes the process of the "steady emission of pus" which are the cancer cells "draining."

20.      The mail label was created through Endicia, a third-party company that assists small businesses with shipping and labeling through the U.S. mail.  I requested Endicia records for the account holder, Timothy Hampton and his company The Original Cream Company, from May 1, 2012 to January 22, 2017.  Timothy Hampton is the only assigned account holder.  The mailing labels were to individuals who had purchased products from the company, including the undercover buys to the Dallas District Compliance Office and me.  Hampton had shipped via U.S. mail over 2300 packages to various individuals throughout the United States, to include Hawaii and Alaska, and overseas to Europe and Australia.

21.      From the records held by Endicia, I have been able to identify several individuals who have made purchases from The Original Cream Company, J.C., S.K.V., L.W., M.H. and T.C.[1],  after making purchases via website or telephone.  I conducted interviews of these individuals and found that all had received products from The Original Cream Company through the U.S. mail after purchases of the black salve or black salve products promised to remove skin lesions that could be cancerous or skin tags on animals.  Specifically, S.K.V. used the same website, altcancercream.com, to order black salve to remove skin lesions.  S.K.V. also provided me emails from sales@altcancercream.com as proof of purchase, the same email that I received after I made the undercover purchase of the Black Salve #100.  I have confirmed that the other individuals referenced above have received packages from The Original Cream Company.

---

[1] These individuals have not been identified in the warrant for the sake of their privacy when this affidavit becomes unsealed per the Local Rules of the Western District of Arkansas.

22.     In conclusion, Timothy Hampton, through his business The Original Cream Company, via the website altcancercream.com, communicates with customers after purchases of new unapproved drugs that claim to heal skin deformities such as skin cancer and warts.  The Black Salve products are simply producing acidic effects on skin that gives the impression that the products are working, or are destroying tissue indiscriminately.  The false advertising on the website and product inserts that claim that these drugs cure major diseases are not true.  Products are then shipped through the U.S. mail as part of this scheme to defraud its customers of money used to purchase these products.

23.     On March 3, 2017, SA Brian McClune, FDA, conducted a domain search on the website altcancercream.com and email sales@altcancercream.com.  SA McClune is a computer forensic examiner with the FDA and through domain searches found that GoDaddy.com, LLC is the Internet Service Provider (ISP) for altcancercream.com.

24.     On March 8, 2017, a Preservation Letter was sent to GoDaddy.com, LLC, to preserve records associated with this account.   In general, any email that is sent to a GoDaddy.com, LLC subscriber is stored in the subscriber's "mail box" on GoDaddy.com, LLC servers until the subscriber deletes the email.  If the subscriber does not delete the message, the message can remain on GoDaddy.com, LLC servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on GoDaddy.com, LLC's servers for a limited period of time.

## BACKGROUND CONCERNING GODADDY.COM

25.     In my training and experience, I have learned that GoDaddy.com, LLC provides a variety of on-line services, including electronic mail ("email") access, to the public.

GoDaddy.com allows subscribers to obtain email accounts at the domain name

altcancercream.com, like the email account[s] listed in Attachment A.  Subscribers obtain an

account by registering with GoDaddy.com, LLC.  During the registration process, GoDaddy.com

asks subscribers to provide basic personal information.  Therefore, the computers of

GoDaddy.com, LLC are likely to contain stored electronic communications (including retrieved

and unretrieved email for GoDaddy.com, LLC subscribers) and information concerning

subscribers and their use of GoDaddy.com, LLC services, such as account access information,

email transaction information, and account application information.  In my training and

experience, such information may constitute evidence of the crimes under investigation because

the information can be used to identify the account's user or users.

26.     The website altcancercream.com subscriber can also store with the provider files

in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other

than ones attached to emails), and other files, on servers maintained and/or owned by

altcancercream.com.    In my training and experience, evidence of who was using an email

account may be found in address books, contact or buddy lists, email in the account, and

attachments to emails, including pictures and files.

27.     In my training and experience, email providers generally ask their subscribers to

provide certain personal identifying information when registering for an email account.  Such

information can include the subscriber's full name, physical address, telephone numbers and

other identifiers, alternative email addresses, and, for paying subscribers, means and source of

payment (including any credit or bank account number).  In my training and experience, such

information may constitute evidence of the crimes under investigation because the information

can be used to identify the account's user or users.  Based on my training and my experience, I

know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

28.     In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.  In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

29.     In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

30.     This application seeks a warrant to search all responsive records and information under the control of GoDaddy.com, LLC a provider subject to the jurisdiction of this court,

regardless of where GoDaddy.com, LLC has chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within GoDaddy's possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States. [2]

31.    As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time.  Further, information maintained by the email provider can show how and when the account was accessed or used.  For example, as described below, email providers typically log the Internet Protocol

_____

[2] It is possible that Go Daddy, LLC stores some portion of the information sought outside of the United States.  In <u>Microsoft Corp. v. United States</u>, 2016 WL 3770056 (2nd Cir. 2016), the Second Circuit held that the government cannot enforce a warrant under the Stored Communications Act to require a provider to disclose records in its custody and control that are stored outside the United States. As the Second Circuit decision is not binding on this court, I respectfully request that this warrant apply to all responsive information— including data stored outside the United States—pertaining to the identified account that is in the possession, custody, or control of GoDaddy, LLC. The government also seeks the disclosure of the physical location or locations where the information is stored.

(IP) addresses from which users access the email account, along with the time and date of that access.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner.  Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email).  Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## CONCLUSION

32.     Based on the forgoing, I request that the Court issue the proposed search warrant on the account listed in Attachment A for the information requested in Attachment B.

## REQUEST FOR SEALING

33.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation, the full extent of which is neither public nor known to the target of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure of its contents may give the target an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

Christopher Walker
Special Agent
FDA – Office of Criminal Investigations


Subscribed and sworn to before me on ___April 24th___, 201 7

Honorable Barry A. Bryant
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with the website altcancercream.com and email sales@altcancercream.com that is stored at premises owned, maintained, controlled, or operated by GoDaddy.com, LLC, a company headquartered at at 14455 N. Hayden Road, Ste. 226, Scottsdale, Arizona.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by GoDaddy.com, LLC (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on March 8, 2017, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      The types of service utilized;

d.      All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e.      All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken; and

f.      For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

**II.      Information to be seized by the government**

All information described above in Section I that constitutes evidence of violations of 21 USC 331(d),  Introduction or Delivery into Interstate Commerce of Unapproved New Drug, and 18 USC 1341,  Mail Fraud, that have been committed by Timothy Hampton, occurring after May 20, 2008, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

For the time period covering **May 20, 2008**, to the date this warrant is received:

A.      All email stored and presently contained in or on behalf of the following email account / addresses:

"sales@altcancercream.com"

"altcancercream.com"

B.      All email stored and presently contained in or on behalf of the following email account / address that is directed to or received from any of the email accounts / addresses listed in item A of this Attachment B:

"sales@altcancercream.com"

"altcancercream.com"

C.      All transactional information of all activity of the email account / address described in item A of this Attachment 1, and any associated account, including log files, dates, times, methods of connecting, ports, and IP addresses.

D.      All business records and subscriber information, in any form kept, pertaining to the email account / address described in item A of this Attachment 1, and any associated account, including account applications, subscriber's names, screen names, all account names associated with the subscriber(s), telephone numbers, addresses, and passwords.

(a) Records that establish sales of new and unapproved drugs, complaints made by victims of the drug, the mailing of products in furtherance of the scheme.

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).